### KLINE v. MARZELL.
No. 3891–49.

United States District Court
District of Columbia.

Oct. 3, 1951.

108

A. Yates Dowell, Washington, D. C., for plaintiffs.

E. L. Reynolds, Solicitor of Patents, U. S. Patent Office, Washington, D. C., J. Schimmel, Washington, D. C., of counsel, for defendant.

CURRAN, District Judge.

This is a civil action under the provision of Section 4915 of the Revised Statutes, 35 U.S.C.A. § 63, in which the plaintiffs, William O. Kline, and the Frick Company, assignee of Kline, the inventor, seek a judgment from this Court authorizing the defendant, Commissioner of Patents, to grant a patent to plaintiffs, based upon certain claims of the patent application of William O. Kline, serial number 595,611, filed May 24, 1945, entitled "Process and Apparatus for Treating Hides."

The specification of the application describes the alleged invention as one relating to a method of and an apparatus for drying materials in general but more particularly, hides and pelts in the manufacture of leather.

The hide is subjected to a temperature low enough to freeze water or moisture therein, and then the frozen hide is subjected to a current of air controlled as to temperature, humidity and velocity as to affect drying by sublimation. The specific details of the apparatus used to carry out the method are shown in Figure 1 of the drawings submitted with the application. The apparatus includes a work loading and unloading chamber, a freezing chamber and a drying chamber. Hides to be dried are placed on an endless conveyor in the loading chamber and pass successively into the freezing chamber and then to the drying chamber and returned to the unloading chamber where they are removed from the conveyor. In order to refrigerate the freezing and drying chambers a refrigeration system is shown, the details of which are conventional. The refrigeration system has cooling portions positioned in air ducts, the freezing and drying chambers having air constantly circulating through them, maintained at the desired temperature by the cooling portions of the refrigeration system.

The air circuit leaves the drying chamber where it enters a conduit and passes through a blower and then another conduit to an air cooler, the air cooler, being cooled by the refrigeration system. From the air cooler the air passes through another conduit to the freezing chamber and exits therefrom through another conduit and blower and into still another conduit. There is a by-pass between the last two conduits which may be employed as desired to vary the amount of air flow through the freezing chamber. From the last conduit the air flows through a re-heater, and through another conduit to the entrance of the drying chamber.

In order to add heat to the air passing through the drying chamber between the air entrance and the air exit, a separate brine system is used. The brine system includes a reservoir having an entrance pipe with a pump and an exit pipe. From the exit pipe a branch line is connected to two heaters positioned at desired locations within the drying chamber and the brine returns to the reservoir through another line. From the brine exit another branch line is connected to a re-heater and returns to the brine entrance through still another line.

In operation hides are loaded on a conveyor within the loading chamber and are moved by conveyor to the freezing chamber in which air below freezing contacts them until they are frozen. The air leaving the freezing chamber is zero Fahrenheit and close to being saturated. Plaintiffs say that in order for air to dry a substance, it is necessary that moisture in the air not condense on the substance being dried, but rather that the substance give up moisture to air which is not saturated at the temperature of the substance. In other words, they say that the dew point of temperature of the air be less than the temperature of the substance being dried.

Briefly speaking, the plaintiffs claim they have produced apparatus and method for drying at temperatures below thirty-two degrees Fahrenheit, which is the normal freezing point of water. They further claim that they have disclosed practical and efficient drying by sublimation of a product which, due to the very nature thereof, in order to obtain finest quality, must be frozen and must be maintained in such frozen condition and at substantially constant temperature, notwithstanding the fact that there would be reduction of temperature of the product caused by the sublimation.

Plaintiffs contend that the claims under consideration here contain the above stated subject matter, including control of the temperature and condition of the product during the drying process by (1) controlling dehumidification of air circulated; and (2) controlling the re-heating of the same in a manner to maintain the temperature of the product substantially constant and below thirty-two degrees Fahrenheit, the freezing point of water.

The defendant denies that plaintiffs are lawfully entitled to a patent containing any of the claims set forth in the complaint for the reasons given in the Examiner's statement, reply to plaintiffs' brief, the decisions of the Board of Appeals of the Patent Office, and in view of nine specific prior patents. The patent to Cutler is considered to be the basis and primary reference relied upon to negative invention and patentability in the method claims sought.

The claims before the Court fall into two classes, those numbered 2, 11, 16, 17 and 31 to 34 inclusive being directed to an art, while those numbered 10, 12, 13, 23, 27, 28 and 30 are directed to an apparatus. Claims 27 and 28 were refused, not because of lack of patentable invention, but because of misjoinder.

Of the eight method or art claims, Claim 2 defines the alleged patentable method in its broadest aspect. This claim is directed to the drying of frozen material by sublimation, including the steps of subjecting the material to be dried to the flow of air having such properties of temperature and humidity that it is capable of absorbing moisture from the frozen material and adding heat to the air as it approaches saturation, in order to restore or maintain its moisture-absorbing ability, without heating the air enough to raise its temperature above the freezing point.

Plaintiffs concede that it is old to dry frozen material by means of dry cold air, but plaintiffs pitch their case on the step of adding heat to air approching saturation, as a result of picking up moisture from frozen material in order to prevent such air from being continually lowered in temperature, and at the same time, to increase the moisture-absorbing ability of such air.

Cutler discloses a dehumidifier and Cutler refers to a compound compression dehumidifying system.

The Patent Office takes the position that when Cutler speaks of circulating cold dry air over the frozen hides, and of dehumidifying the air so circulated, by a well known compond compression dehumidifying system, he is mentioning operations which include freezing the air to a low temperature to freeze out the water vapor contained therein, and then, since the air is saturated at that temperature, heating thereof to the temperature used in the drying chamber and that, therefore, *Cutler's process to be operative must operate in this fashion*.

Cutler's patent specification dealt with the concept of dehumidification, which merely means removing moisture from the air. Plaintiffs' patent does not deal

110

with removing moisture from the air, but rather with conditioning the air so that it can pick up additional moisture. It follows, therefore, that Cutler's disclosure is insufficient to negative novelty or invention in the process defined in Claim 2 of plaintiffs' application. Claim 2 will be allowed.

Claim 11 is essentially the same as Claim 2, except that it specifically provides that the heating of the air occurs "within the drying chamber." From a patentable standpoint it makes no difference where the heating takes place. Whether the heater be placed in the drying chamber or outside the drying chamber is a matter of choice, not invention. This limitation in Claim 11 is without patentable significance. This claim is not allowed.

Claim 16 is much more specific than Claim 2 in that it is limited to freezing the hides under stretching tension, to drying by countercurrent contact with refrigerated air, and to heating the air passing through the dryer in stages. Claim 17 is broader than Claim 16 since it omits the concept of heating the air in stages. The limitation in these two claims to freezing the hides while under stretching tension is in the Cutler patent, while the concept of countercurrent flow of the drying air is old in the Dunkley and Hyde patents. No improvement flows from heating in stages and, therefore, this limitation imparts no patentability. Claims 16 and 17 are not allowed.

Claim 31 is similar to Claim 2 with the added limitation that the amount of heating is controlled to maintain the sensible heat of the air substantially constant. The Patent Office takes the position that no step or operation is defined in the claim to *insure* a constant sensible heat in the drying air, and therefore, the claim must fall. A step or operation to insure a constant sensible heat in the drying chamber is not necessary and Claim 31 will be allowed.

Claim 32 is similar to Claim 2 but limits the amount of heating by provision of insulated walls in the drying chamber. It is an old practice to insulate both hot and cold surfaces. This claim is not allowed.

Claim 33 is similar to Claim 2, with the added limitation that atmospheric pressure is maintained in the drying chamber. This is old in the Dunkley patent, which provides a liquid seal at the ends of the drying chamber to prevent or minimize the leakage of air or gas.

Claim 34 is the most specific method claim since it includes compressing the refrigerant, condensing the same with a cooling medium and utilizing the condensed refrigerant to cool the air to be used for the drying of the frozen material, together with the steps of the sublimation drying process as defined in Claim 31. The Patent Office says that Claim 34 is subject to the same disability as Claim 31 since it too speaks of maintaining the sensible heat of the air constant. The Court having decided that the objection to Claim 31 is not a valid one, it follows that Claim 34 will be allowed.

 Five of the rejected apparatus claims, Claims 10, 12, 13, 23 and 30 show no invention over the prior art and are, therefore, not allowed. Plaintiffs have not shown invention in combining prior art disclosures. What they have shown is skill and good engineering practices.

 Claims 27 and 28 were refused plaintiffs on the ground of misjoinder. These claims the Patent Office says define a subcombination of elements which is capable of use independently of the apparatus defined by the other claims. Plaintiffs admit that these claims define a subcombination but say that they are properly included with the other apparatus claims. The Court concludes that there is a misjoinder, for if plaintiffs believe that they have an invention in an air cooler structure, it should be claimed in a separate application, for each patent is issued for but a single invention. Claims 27 and 28 are not allowed.

Findings of fact and conclusions of law being contained in this opinion, no formal findings or conclusions are necessary. Counsel for the defendant will prepare the appropriate judgment authorizing the Commissioner of Patents to issue to Frick Company, Inc., as assignee of William O. Kline, Letters patent of the United States, including Claims 2, 31 and 34, part of the rejected claims of application designated serial number 595,611.